The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Please be seated. First of all, I'd like to thank the lawyers for coming to Durham for this sitting. And I'd also like, on behalf of my colleagues, I'd like to thank the school for its gracious hospitality and its invitation. So we're very pleased to be here. Thank you. We are now, we will now hear argument in our first case, Dillon v. BMO. Mr. Ranlett. Thank you. Thank you. I'm Kevin Ranlett. I'm arguing today on behalf of the defendant appellants. And I reserve five minutes of my time for rebuttal. This is an appeal from the denial of the defendant's renewed motions requesting arbitration. The plaintiff has challenged this court's jurisdiction. But with the court's permission today, I'd like to address the merits of the appeal. And although I'm happy to answer any questions the court might have about jurisdiction, the defendants are also happy to rest on the briefing on that issue. This case is one of a wave of a dozen class actions filed by counsel for Plaintiff James Dillon in courts across the country. In each of these cases, the plaintiffs allege that they signed up online for payday loans from various lenders owned chiefly by Native American tribes. The plaintiffs allege in these cases that the terms of those loans violate their local state usury law. But the plaintiffs haven't sued those lenders. Instead, they've chosen to sue some of the banks in the chain that process the automated clearinghouse transfers that move the money between the lenders and the plaintiff's bank accounts. Now, many of the loan agreements, like the ones at issue here today, have arbitration provisions. And for that reason, of the 12 cases, every single one, except this one, has been sent to arbitration already or voluntarily dismissed, we believe, to avoid an order of compelling arbitration. This case should be no different. But the court below concluded that the defendants had waived or procedurally defaulted their arbitration defense. Right. And why had you not procedurally defaulted your arbitration defense? We hadn't, Your Honor, because the Federal Arbitration Act requires the procedure that we're requesting today. And let me just put that in context, Your Honor. When we filed our first arbitration motions at the very outset of the case, we simply attached Mr. Dillon's loan agreements to the motion papers. At that time, we didn't have authenticating affidavits. Why not? Your Honor, we didn't have them because they simply were not available at the time. Now, first of all. But when you ultimately did get them authenticated in relatively short order, within 29 days, I think, the first was filed with your second motion, you were able to get them authenticated once you put your mind to it. So why should that not be taken into account and held against your client? Your Honor, that's an excellent question. The reason why that we weren't able to get them before and were able to get them afterward is that we're a little bit at the mercy of these third parties, the tribal lenders, to authenticate them. Now, the lenders, you know, we don't have control over them. There was evidence below that Defendant BMO Harris had presented that the tribe simply refused to provide. Well, why couldn't you have used the discovery process to obtain that information? Well, a subpoena to a tribal entity is, Your Honor, basically a waste of time because tribes can invoke tribal sovereignty. You don't know that they would have done that? They had made clear to us. Isn't that speculation? It is possible that they could have, Your Honor, I agree. It is theoretically possible that they could have responded to the subpoena, but there was every reason to believe that they would not. I think underlying both my colleagues' questions is sort of the broader question of, under your theory, what prevents a litigant from simply filing a series of motions to compel arbitration, adding slightly more evidentiary support at each juncture? Doesn't it make possible a level of gamesmanship that we would ordinarily find impermissible? I think that's the concern, or it's my concern. I agree, and it very much was the District Court's concern, but I believe that the concern was misplaced here because our position, which is the same as the position of the Third Circuit, that's all I'm asking this Court to do is to review the Third Circuit's decision in Guadadi, which covered the procedures that should govern in great detail. And here's how the Third Circuit laid out the procedure, and I believe just a careful review of that will make clear that there is not this concern that there are going to be an endless series of arbitration motions. Is there any consequence, though, to a party's failure to present the best evidence at the earliest possible juncture? And if that's factor, if you're going to address that in response to my previous question, please feel free to respond to it in that context. Yes, I apologize, Your Honor. Yes, what should happen, the Third Circuit explains, is that sometimes it appears from the complaint that the arbitration issue can be resolved from the pleadings alone. And that's what the defendants in good faith believe was the case here because we believed that the fact that Mr. Dillon's complaint relied extensively on the loan agreement, we thought that that meant under Federal Rule of Civil Procedure 10C that that document was going to be incorporated by reference into the pleadings, and so it would be fair game. Now, Mr. Dillon never denied that those agreements were genuine. Instead, he said, wait, wait, the authentication hasn't been proven. We thought that was not enough to actually place the authenticity of the agreement in dispute within the meaning of the Federal Arbitration Act. These were unsigned documents, though, weren't they? Well, that's correct. They did not have physical. That's different than if it bore his signature, certainly, don't you agree? Your Honor, they were signed electronically because the plaintiffs signed up for their loans online. Back it up just a little bit. What was your evidentiary burden as the proponent of arbitration at the motion to compel stage? We believe that our burden was to show, based on the pleadings, that's what we were trying to show, that there was an agreement to arbitrate. We believe that we had made that showing. What evidentiary standard governs, and could you tell us if there's any precedent that you're relying on? The Guidotti decision in the Third Circuit covers this. The Third Circuit said there that sometimes it will appear from the pleadings that there is an arbitration agreement. And if that's so, then the defendant can file a motion, and it's sort of treated like a little motion to dismiss. And so if it turns out, however, as it happened here, as Judge Eagles concluded below, that either it can't be resolved on the pleadings, or if there's a dispute of some kind about the existence, the authenticity, the formation of the arbitration agreement, here's what the Third Circuit said. It said that the motion to compel arbitration must be denied pending further development of the factual record. And then once the additional facts are available, here's what the Third Circuit said. The district court should entertain a renewed motion to compel arbitration. That's exactly what we tried to do. And that's what every other district court except this one has done in this situation. To our knowledge, no other court has ever subjected a second motion to compel arbitration to a strict or heightened reconsideration standard. I'm not sure that you've answered Judge Duncan's question, which is significant to me, too. Aren't you essentially saying the trial court has no discretion with regard to entertaining a renewed motion to compel? That the federal rules of arbitration, the case law, absolutely eviscerates the discretion of the trial court. Is that your position today? It is, but in the context that I'm discussing. And just to be clear, there are different reasons why a district court might deny a first motion to compel arbitration. If the district court has actually decided the arbitration defense, which sometimes happens, like the COSA decision from the First Circuit is a perfect example. There, the defendants moved to compel arbitration. The district court concluded that as a matter of law, this arbitration provision didn't cover the claims at issue. The motion is denied, but the arbitration defense had been resolved. By contrast, in our case, the arbitration defense was not decided. The district court concluded that our first motions had to be denied because it was disputed whether the arbitration agreement was authentic. Judge Eagles did not decide whether it was or it was not authentic. In fact, it's quite clear from Judge Eagles' second order that she believes that the arbitration agreements are authentic. Because the final footnote in her opinion says that those agreements could be used for any other purpose in the case. So what I'm trying to get at, Your Honor, what the Third Circuit made clear is that the defense, the proponent of arbitration has one shot if the first motion has failed because there's a dispute that prevents the arbitration defense from being decided. Then you get one renewed motion to compel arbitration to tee up that dispute. And if it can't be resolved on the papers right there, the section four of the Arbitration Act makes abundantly clear what happens. If there's still a dispute, the district court shall proceed summarily to the trial thereof. And that's the end of it, Your Honor. Is there an issue here about the validity of an e-signature? No, Your Honor, because there's been no statement or denial by Mr. Dillon that the arbitration agreements actually are genuine and the ones that he agreed to. But whose burden is that to show the validity of the arbitration agreements? Are you not seeking to rely on them? Ultimately, yes, Your Honor. It is ours, and we believe that we've met that, especially here on our renewed motions where the authenticating affidavits are essentially unchallenged. Though, of course, Judge Eagles did not consider them, and that would be something that Judge Eagles, we believe, should consider on remand. But ultimately, the purposes of the Federal Arbitration Act also make clear that our procedure that we're requesting is required. The Supreme Court's made clear that the purpose of the Federal Arbitration Act is to move parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible. Those are the Supreme Court's words and Moses H. Cone. What do we make of the fact that the district court treated the motion to compel as a motion for reconsideration? Your Honor, on one level, it makes no difference whether you call this a second motion, a renewed motion, a motion for reconsideration. All that matters is that it's a request for arbitration, and what's the standard that applies to a request for arbitration under these circumstances? Regardless of nomenclature. So I believe it makes no difference, but the district court believed that because she was treating it as a motion for reconsideration, she was required by Federal Rule of Civil Procedure 54B to impose a heightened reconsideration standard. Doesn't it make a difference in that it became relevant for purposes of a motion for reconsideration whether or not the evidence was previously unavailable? Whether there was a reasonable opportunity for you to have had the information in a timely manner. Well, if the reconsideration standard really does apply, I believe... And that was really the basis of my question. Doesn't it make a difference for that reason? Oh, I'm sorry that I misunderstood your first question because I believe there's a threshold question of whether that reconsideration standard really does apply, and I think it does not. The Federal Arbitration Act and the Third Circuit and all the other courts to consider it have concluded that it does not apply, and Rule 54B does not command that a stringent reconsideration standard be applied. The rule, of course, could never trump the FAA, but the rule itself doesn't rigidly limit reconsideration. The rule says only that a district court may revise its interlocutory orders at any time before final judgment, and this court explained in the American Canoe decision that when, like here, the question at hand involves the adjudicatory authority of the district court to hear the dispute, then concerns about law of the case or finality must yield to the need to get that question right. And more importantly, Your Honors, if the defendants are not allowed to present renewed motions to compel arbitration, the purposes of the Federal Arbitration Act are frustrating in two ways. Number one, we're not able to try to efficiently resolve arbitration issues on the pleadings when it appears that that's a possibility. But doesn't that get right back to the question that the court was asking at first, and that is it can't be more efficient to have multiple renewed motions to compel arbitration, each one being slightly more heavily supported in an evidentiary sense than the previous one. You're correct, but that's not the process that we're asking for that the Third Circuit set up. You file your first motion. If there's a dispute, then there's factual development followed by one more motion. And at that point, the arbitration defense is going to be resolved. What is the legal basis for saying only one more motion? It seems to me that the necessary boundary of your argument is you can do it as often as you want. I know what the Third Circuit said, but what is the conceptual boundary of your argument regarding the number of times the motion to compel can be renewed? Section 4 of the FAA. It's command that if there's a dispute over the existence of the arbitration agreement. No, no, just answer the question. If you would, please. What's the conceptual boundary of your position regarding the number of times a proponent of arbitration can come back into court in the same case on a renewed motion to compel? One time, Your Honor. And why? Because the Third Circuit says so? The Third Circuit and every other court to consider the question has allowed it, and because the purposes of the— But why not three times? Why not four? That's what I'm asking. I'm sorry, because Section 4 of the FAA makes clear that once there's— makes clear that if there is still a dispute, you're supposed to go directly to trial on that limited issue. That's what Section 4 of the Federal Arbitration Act says. Now, going back to Your Honor's other question about why, you know, assuming the reconsideration standard does apply, why wasn't what happened below fine? Now, for one reason, the judge ignored the undisputed showing that the lenders could have invoked tribal sovereign immunity. Now, it is theoretically possible that they could have— Might have been to their advantage not to. Well, I'm not— There are all sorts of strategic decisions in litigation. I'm not sure that it's—they made abundantly clear to us that they would not comply, and they were, with perhaps understandable reasons, not eager to get involved in the case, because after all, the plaintiff in the case is accusing them of having committed crimes. But also, this Court has reiterated time and again that there's supposed to be a heavy presumption against waiver or default of the right to invoke arbitration, and by subjecting the second motion to compel arbitration to a heightened reconsideration standard, that presumption's effectively been reversed, which is inconsistent with this Court's decisions. Now, ultimately, since the purpose of the FAA is not to, as the Supreme Court said in the American Express decision, it's not to impose preliminary litigating hurdles on the party seeking arbitration. It's instead to make it as easy as possible to get into arbitration out of court. It would be far more efficient to allow parties, if there's a good faith argument that it can be done simply on the pleadings— this is after all at the very outset of the case before any discovery— let them take their shot, like the Third Circuit says. Because otherwise, what will happen if the proponent of arbitration has to dig up every last iota of evidence in favor of arbitration with that first initial motion at the outset of the case, the party's resources would be wasted with very expensive and burdensome third-party discovery in this case, but discovery in other cases that could potentially be completely unnecessary if, in fact, it could be resolved. As a practical matter, what's the consequence of our disagreeing with you the multiple other class actions that have been referred to arbitration on the same topic? Well, the consequence for those other cases, those other cases have already been resolved in that fashion. If this case, if you affirmed, then this case would proceed on remand in the district court. And the consequence would be to— But it would be the only one that would proceed in a litigation forum. Of that wave of a dozen. I think very recently, point for counsel, Dillon has filed a few more of these cases in other courts. With the court's permission, unless there are any other questions right now, I'd like to reserve the balance of my time for rebuttal. That would be fine. Thank you. Thank you very much. Mr. Six. No, actually, it's useful for us to see it. Thank you. Can you not see it? It's fine. Yeah, it's helpful for us to see it as well, so we have some sense of it. But we don't want— Good morning. My name is Steve Six. I represent the plaintiff, James Dillon. May it please the court. I'd like to start with Judge Duncan's question on the standard. And I think it incorporates a little bit the question on the e-signature. And I think the principle is the banks have conflated the proof of a writing with an arbitration provision and the existence of an agreement to arbitrate under that writing. Do you challenge the existence of an agreement to arbitrate? Has your client ever challenged the existence of an agreement to arbitrate? Yes, we have. In the responses to the motion to compel, we raised the fact that this writing was not authenticated. And that's the standard we're talking about. Before you can invoke— Is that— Go ahead. Isn't it part of the loan agreements about which your litigation rests, on which your litigation rests? You can't be— You're going to use those loan agreements. I don't know the answer to that question. Why are they throughout your complaint, then? Well, here's the answer to that. Mr. Dillon took out a number of loans, like a lot of these folks who get trapped in a cycle of debt. It's happened in cyberspace somewhere. And the example I used with Judge Eagles was there's one lender called Venn Capital. We have no idea where they exist. They're off in cyberspace. Mr. Dillon doesn't have the loan agreement. He doesn't know if that loan agreement that the bank has brought on behalf of Venn Capital is the loan agreement. When we drafted the complaint, we went to his bank records, and it showed that this bank had put $500 in his account. And they made certain debits from his account. And that totaled up to an APR in excess of North Carolina state law. So the claim that Mr. Dillon is one of the signatories is in the best position to say, yeah, this unauthenticated writing is the one that applies to my loan. Who knows? Maybe it is. Maybe it isn't. I don't understand your answer at all. Okay. Well, let me try again. I guess what we're saying is – Has there ever been a challenge to the authenticity of the arbitration agreements or the existence of an arbitration agreement? Well, my client is one of the signatory. Can you start off with yes or no and then perhaps explain? Yes, there has been a challenge. In the responsive briefing, we said – And you're challenging the existence of an arbitration agreement attached to the – as a part of the loan agreement. Yes, we're challenging that. Under our system, when a piece of evidence is introduced, it's not incumbent on the other party to concede it. We can say we want you to establish that this is in fact the writing with the arbitration agreement that applies because these, again, are non-signatories. It's unlike any other case out there. The banks are complete strangers to the transaction. Mr. Dillon doesn't have several of these agreements. And so he's not in a position to say, yes, in fact, this is the loan agreement or no, it's not. So what we do is we put the party seeking to move the case out of federal court and into arbitration to the burden of establishing that it's a genuine and authentic document. Has that answered your question? I feel like it hasn't. So is this case in North Carolina – I know you've had these lawsuits across the country. Is this one the only one in which you've challenged the authenticity of the arbitration agreement? In some of the other cases, that challenge wasn't made and there was no dispute. So is this the only one in which you've challenged the authenticity of the arbitration agreement? In all of the cases, I can't say for certain. We dismissed two of the cases, and I think in one of those cases, perhaps we challenged it and dismissed it. But what the other courts did was they didn't have this issue before them, and some of them point out there's no challenge to the authenticity. In some of those cases, we moved to reopen the case. So I think the distinguishing principle here is what was the discretion that the judge has? Well, the judge has the discretion to manage proceedings and can decide when to hear motions and when not to revisit decisions that are already made. That's the limiting principle. It's the judge's discretion to manage the docket. And of course there are renewed motions for arbitration. Those happen all the time, but they always happen when there's something else. In each of the cases, there's more discovery or the judge invites briefing. Here, the threshold wasn't met to establish that there's even a writing with an arbitration provision in it. And if that was wrong, because that's what Judge Dillon said, they should have appealed. They could have appealed, but they didn't. So the second order... What are we to make of the provisions, though, of the Federal Arbitration Act that a district court shall, not may, but shall grant a party's application for a stay pending arbitration if the suit was based on an issue referable to arbitration and the applicant is not in default? Well, I think that gets to what I heard my counsel make comments about Section 4, this idea that if there is a dispute about the existence of an agreement to arbitrate, you do need to proceed to summarily resolve that. But in order to determine whether there's a dispute about the existence of agreement to arbitrate, you need to know under what writing are you talking about. For example, in the... But apparently that is what the banks were trying to remedy with the second motion to compel. Exactly. And that's why I think the facts do matter. So what was Judge Dillon presented with? She was presented with... You mean Judge Eagles? Excuse me. What was Judge Eagles presented with? She was presented with a motion to compel and unauthenticated documents, briefing that raised the challenge to authenticity, and then the responsive briefing from the folks moving to compel saying, you know what, that's not our burden to establish authenticity. That's the first motion to compel. I mean, that's the first proffer. Didn't the banks come back with a renewed motion to compel? Isn't that what we're arguing about? Yes, it is. And they did. And they then had affidavits and some documents. But I think the point that distinguishes this case is they asked Judge Dillon to... Eagles. Sorry. Asked Judge Eagles to decide the case on the box of evidence they brought to her. They didn't say, like many of these other cases, we need more time, let's do discovery. They said, here's what we want you to decide the case on. Here's the motion to compel. On the renewed motion to compel? No, on the original motion. But aren't we dealing with a renewed motion to compel? We understand what happened with respect to the initial motion to compel. But in approaching the court with a renewed motion to compel, it appears that the banks cured the evidentiary deficiency that had been identified. And that is where the judge's discretion comes in to say, what is this renewed motion? Is it, like the other cases sprinkled in the briefs, something more? You do have the discretion to take up a decision of an earlier order. The district court can do that. But it's not automatic. They also have the discretion to say, you know what? This is simply a request for me to redo what I did before. And everything you're bringing is not new evidence. There's no change in the law. But that's only if you treat it as a substantive matter, as a motion for reconsideration, rather than as what it was labeled as being, and that is a renewed motion to compel arbitration. And that's why it seems to me, at the very least, the district court has to consider whether or not the standards that she applied under the misconception that she was dealing with a motion for reconsideration, apply in the context of a motion to compel arbitration. I would agree with that, and I would say that it is within... Oh, you do? I would say it's within... So we send it back to the district court to revisit once she gets the label correct? No, the labeling, I think, doesn't matter. It's the principle of the judge's discretion to look... It did matter because the district court applied a heightened standard in considering this as a motion for reconsideration, rather than, as Judge Duncan indicates, what it was, a motion to compel arbitration. And I think what the distinction is, and the cases, I think, all support it, that if you have, and it's just based on the judge's discretion, if you have a motion that's decided, and then more things happen, and a motion on the same issue comes back before the court... No, that's not responding to what I think Judge Thacker is asking, and what I know I'm asking, and that is that you're treating it as... You're treating it under a heightened standard of a motion for reconsideration. Was the evidence previously available? Whereas if you treat it as what it was labeled, and that is a renewed motion to compel arbitration, the standard is different, and it's lower. So why would we, and I think at one point you seem to be agreeing with me, why would we not at the very least have to send this back to the district court to get the analysis right? Well, I agree that what you've laid out there is what they did. They labeled it as a renewed motion, okay? And I agree that if it was a renewed motion that occurred as in these other cases later when there was a change in circumstances, there would be a different standard to look at it. But when it is simply a request to redo what was done before, the judge can treat it as a motion for reconsideration. So simply labeling it as... What is your best case law support for applying the reconsideration standard to an arbitration to compel scenario? So I think the best is the case from the first circuits, the Causey versus Networks Associate case. Very similar to this, there were in Causey two agreements, one with arbitration and a later without. The plaintiff brought the claim under the second agreement without arbitration, and the defendant argued that it was also including the first. The judge heard the motion to compel and denied. The case went on. Later the defendant refiled the motion, and the judge looked at it and said, you know, it's not new evidence. Right, but the court was addressing the merits first time around. Agreed. Right, and why isn't that a significant difference from the posture of this case? Well, I think it is addressing... I don't think the evidentiary hurdle of even establishing that you have a writing with an arbitration provision in it, that's an evidentiary finding the judge needs to make. No, she didn't get to the merits of the arbitration agreement, but she resolved the merits of that dispute. There was no writing properly before the court. It seems to me you've got to get over the threshold problem that motions to reconsider are disfavored. There's a very strong standard. Because courts shouldn't be asked to just re-decide things over and over again. And on the flip side, motions to compel arbitration are to some extent favored. Because if the parties have agreed to arbitrate, the federal courts have come out very strongly that they should be permitted to do so. So don't you have a very different lens that is being used to view the issue before the court that the trial court looked at? She was looking at it from a disfavored, from the entry gate. As a motion to reconsider, it was disfavored when the federal jurisprudence on arbitration is not the same. And the distinction I would make is, I would argue that those policies and policies under the Federal Arbitration Act would favor arbitration and quickly move things out of litigation into arbitration. None of those are invoked until a party first establishes that there's a writing with an arbitration provision. But that was the attempt of the second motion to compel. It sort of goes in circles. That's exactly what the banks were attempting to do in that second motion to compel, is to address the question that you raised of authentication. Let me ask a slightly different question. Can you identify for us, can you identify how two rounds of motions to compel arbitration prejudiced your client? Yes, I think it's similar to the Passmore case that is cited in the briefs, and also the in-ray checking litigation case cited in the briefs, where the court looks at prejudice from that briefing process. So the prejudice, and Judge Dillon mentions it in her order as well, that the prejudice to him would come from having briefed it, having to brief the second issue, and travel to North Carolina and to make those arguments. But how would that differ from any other expenditure of effort in a litigation context? I thought that's precisely the kind of thing one is not allowed to look at. Usually you look at whether or not the party, whether a party is in default by the extent to which they've utilized the litigation process. But here you have the banks trying pretty diligently to get out of litigation and into the arbitration context. I guess I might disagree with how diligent that was. What we know is BMO was put on notice and had some discussions. Well, can we please, just for purposes of my question, focus on the renewed motion to compel arbitration, because that's really the only thing that's before us. Right, and what I can say about that is, I think what the district court has is the discretion, however that motion's labeled, to treat it under the well-settled law of the circuit, on 54B law. And there's nothing in the FAA that compels otherwise. So that is the best I can answer that. And I think the facts do matter, and the facts show that as to one of the banks, BMO, we know something about why they claim they couldn't get the evidence the first time. As to the other two banks, it is silent. So our answer is it is appropriately treated as a motion for reconsideration, and there's no appellate jurisdiction for that under 16A. And I think looking at 16A supports that. It talks about an appeal from an order seeking a stay under Section 3. And what Judge Eagle's order, the second one, the motion for reconsideration was, was just that. It was a denial of a motion, a denial of a decision to revisit the earlier order. Federal Rule of Appellate Procedure 4 treats those differently. They don't toll the time at all. And in this case, we would suggest that it can be resolved simply by saying there's no jurisdiction for the second appeal, or to follow the analysis of the First Circuit in the Causey case to say, you know, this jurisdictional issue is raised, but we can affirm the district court's decision that there was no abuse of discretion in determining the evidence that was brought the second time wasn't new. And I think there's simply no evidence in this case that any of the 54B requirements were met. So I would make that distinction that the district court has that discretion to treat it, and that's the limiting principle. Could there be renewed motions? Yes, and the district court can look at that and take those up, again, within the discretion of the district court in managing its proceedings. The Gudadi case in the Third Circuit that was referenced by counsel, I think there's some distinctions. Again, it was two signatories. There was no dispute that there was a writing before the court that contained an arbitration provision. There was a dispute about whether the arbitration document was later delivered. So that was getting to the existence of an agreement to arbitrate and takes you down the path of Section 4, where a court has to summarily resolve that. I don't want to restate it too many times, but we feel that we haven't got to the Section 4 point because they never, in this case, established an authentic agreement and had that properly before the court. And I think, thinking about what would have happened if Judge Dillon had granted the first motion, I mean, where are we then? So Mr. Dillon's case goes to arbitration. His constitutional right to a jury trial in the federal courts has been removed. On what basis? On the basis that these may be the documents that apply. And it's especially suspect here where you don't have signatories like in almost every other case in the brief. It's a homeowner and a contractor. It's an employee and an employer. There's no dispute that the agreement is the agreement. There's simply a dispute about agreement to arbitrate under that writing that's been established. So I can see that your concern is, well, why didn't they just have it good enough the second time? We've now got it all before the court. Is it a harsh result to simply say, you didn't get it right the first time? We'll probably try this case, I hope, and I may try and introduce some evidence, and the judge may say, you didn't lay a foundation for it, and I may lose the case. But my answer can't be, well, maybe I would have done some discovery, but I didn't think it would work. I mean, that's the position the banks are taking. They didn't invoke any of the tools under the civil procedure rules to get the right evidence. They didn't ask the judge for more time. They didn't suggest in any way that the judge should proceed other than to decide on the box of information she was presented. And in fact, that's what they asked for. And later, the affidavits were produced, and I think that shows that certainly with diligence they could have been obtained the first time. So the principle certainly is the one that the First Circuit said, this panel has mentioned, which is there's just no entitlement to bring successive motions to compel and to have successive interlocutory appeals under those. Unless there are other questions from the panel, that is my time. Thank you very much. Thank you. Mr. Randlett? Thank you very much. I just wanted to clarify or unfortunately correct one thing that my colleague had said and then turn back and hopefully give you the answer that you were looking for. Now, I believe that my colleague was asked if Mr. Dillon had ever disputed the authenticity of the arbitration agreements. The answer is no. He never said once in the record, that's not my agreement, I didn't sign that, I don't know if that's my agreement. He didn't say any of that. All he did is object. The document is hearsay unless there's an authenticating affidavit. And I think it's abundantly clear that they really were his arbitration agreements. Now, second, I believe the Court was concerned, what's the limiting principle here? How many times do you get to go back? The principle is you get a ruling on the merits of your arbitration defense. And the Supreme Court addressed your concern about abusive serial arbitration provisions in a very similar context in the Arthur Anderson case. Because there the concern was, third parties are going to bring a series of abusive third party arbitration motions, what's going to stop that? And the Supreme Court said, look, that parade of horribles can't trump the requirements of the FAA, which every other court in this situation has understood. Now, finally, even if this case really, the renewed motions really were subject to the reconsideration motion, this case still needs to be remanded. Not only to consider the new evidence, because it qualifies as new evidence, and what constitutes due diligence, Your Honor, should depend on the circumstance here. When there's a strong preference in the statutory scheme that moving to compel arbitration should be as easy as possible and without preliminary litigating hurdles, you should only have to do what's necessary. You shouldn't have to embark upon years, potentially, of third party discovery that might perhaps be unnecessary. Due diligence shouldn't require that kind of scorched earth litigation. And, Your Honor, you asked, how do you know that those tribal lenders wouldn't have just responded to the subpoenas? They're fighting, Your Honor, tooth and nail to vindicate their tribal sovereign immunity. And, in fact, one of the tribes in this case is involved right now in proceedings in the Second Circuit, which has now gone on for over two years on that issue with no resolution. I just don't believe that it makes sense for this initial arbitration motion, which is supposed to be resolved easily, to get bogged down in, you know, two years of fighting out that subpoena. Thank you, Your Honors, very much for your consideration. We respectfully request that the order below be vacated and remanded with instructions that Judge Eagles consider the merits of the arbitration sentence. Thank you. Thank you very much. We will greet counsel and then have a brief Q&A. All rise.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker